**HOUSTON TYPOGRAPHICAL UNION NUMBER 87, Appellant,**

v.

**HOUSTON CHRONICLE PUBLISHING COMPANY et al., Appellees.**

No. 3996.

Court of Civil Appeals of Texas.

Eastland.

Nov. 12, 1965.

Rehearing Denied Dec. 17, 1965.

Bliss Daffan, Houston, for appellant.

Butler, Binion, Rice & Cook, Houston, James Crowther, Houston, Liddell, Austin, Dawson & Sapp, Houston, William Robert Brown, Houston, for appellees.

GRISSOM, Chief Justice.

Houston Typographical Union Number 87 sued the Houston Chronicle Publishing Company et al. The plaintiff asked the court to construe and enforce an award of a board of arbitration so that reproduction of advertising placed with said newspapers by a local firm through an advertising agency must be reproduced by the union members in the composing room of said newspapers. The court sustained the publishing companies' motion, dismissed the jury and rendered judgment for the defendants. It construed said award to exempt such advertising from reproduction. The Union has appealed.

We are first confronted with the contention of the Chronicle that the Union's points cannot be considered because they were not presented in its motion for a new trial. Placing a liberal interpretation upon such motion and points, in conformity with the spirit of the Supreme Court's decisions in such cases as Fambrough v. Wagley, 140 Tex. 577, 169 S.W.2d 478, 482, we have concluded that the Union has presented a point to the effect that the court erred in construing the award of the board to exclude from the requirement of reproduction advertising placed by local businesses through an advertising agency. We think the award does not exclude from reproduction advertising placed by local concerns through an advertising agency and we reverse the judgment of the trial court and render judgment for the Union that reproduction thereof is required.

The following portions of a contract between the Union and the Publishing Companies were deemed relevant by the arbitration board and were construed by it as hereinafter shown.

"(1) Sec. 25. National (general) advertisements, plates and plate supplement matter, printed supplements, type, plates and/or matrices, other than local advertisements are exempt from reproduction.

(2) Local advertisements not produced under the jurisdiction of Houston Typographical Union No. 87 in shops employing its members are subject to reproduction and must be reset as nearly like the original as the equipment of the office will permit, assembled and proofread.

\* \* \*

(4) Local advertisements produced under the jurisdiction of Houston Typographical Union No. 87 in shops employing its members shall be reproduced as above.

\* \* \*

(6) The addition or insertion of a name or names and/or address or addresses, and/or store slogans, phone numbers, store house, tax lines, or matter of a similar nature, to any national (general) advertisements or any such by general advertisers having stores in several states, does not make it a local advertisement nor require its reproduction.

(7) The attached list of advertising is not subject to reproduction, provided copy is prepared by the home office and sent in mat form to the local newspapers:

| | |
|---|---|
| Bond's | Baker's |
| Robert Hall | Burt's |
| Stein's | Chandler's |
| Franklin's | Douglas Shoes |
| Regal Shoe | Day's Credit Clothing |
| Thom McAn | Loftis Jewelry |
| Florsheim Shoe | Allen Shoe Store |

\* \* \*

(10) Advertising exempt from reproduction is national advertising more particularly defined as follows:

(11) The advertising of products manufactured and sold in various localities through distributors, such as autos, tires, radios, institutional ads, etc.; the goods and services of oil companies, insurance companies, railroads (except Southern Pacific), bus companies, air lines; a brand of beer, and advertisement of a particular motion picture (when placed and paid for by producer, such as Loew's weekly ad); Advertisements of Southwestern Bell Telephone Company advertising their telephone service in general and not addressed particularly or exclusively to the Houston public and similarly for the two gas companies where not identified as the Houston division or addressed to the Houston consumers or otherwise identified as a local ad."

The issue presented the background, the contentions of the litigants and the findings of the Board were stated by it as follows:

## "ISSUE NUMBER TWO

### Case Background

Central in the discussion of this issue is the interpretation and application of Section 25 of the agreement between the parties. Particularly involved is the distinction between local and national (general) advertisements and the interpretation and application of the contractual provisions concerning reproduction.

* * *

On June 12, 1957, the Publishers wrote a letter to the Union as follows:

'It has come to our attention recently that certain classes of advertisements are being reproduced in Houston Newspaper composing rooms which we do not believe the contract required to be reproduced. This is a request for a meeting of the Joint Standing Committee to discuss the matter.'

After numerous meetings, the parties were unable to resolve the issue and the matter was referred to this arbitration board for final and binding determination.

### ISSUE

In the opinion of the Chairman, the issue before the Board is: What criteria should be used in distinguishing between national (general) and local advertisements for the purpose of determining compliance with the reproduction requirements of Section 25 of the Contract?

### POSITION OF THE UNION

The Union Contends:

1. That national (general) advertisements are those placed nationally by advertisers either directly, or through an agency, with the newspaper in which the ad is to appear;

2. That national (general) advertisements are those placed by national (general) advertisers, who have control of what is to appear in the advertisement and of when and how it will appear.

### POSITION OF THE PUBLISHERS

The Publishers contend:

1. That a national (general) advertisement need not necessarily be placed by a national advertiser, but might be a cooperative ad, for example;

2. That advertisements of nationally advertised products received by the newspaper in matrix or plate form are national (general) advertisements even though,

   (a) it has added to it the firm name and/or address, and/or phone number, and/or store slogan or the names of several firms with other identifying data,

   (b) it includes prices which may either have been included in the original mat or inserted locally,

   (c) it includes a coupon, which is usually inserted locally,

   (d) it is included in a larger ad, other elements of which are local,

   (c) it includes a coupon, which is product with additions such as those described in (a), (b), or (c) above;

3. That advertisements of chain stores sent in mat form from home offices and not prepared by a locally operated advertising department are national (general) advertisements;

4. That chain store advertising of nationally advertised products sent in mat form from their home office is national (general) advertising.

## FINDINGS OF FACT AND CONCLUSIONS

1. The term 'national' advertising is, of course, not a new one. It has been used in the newspaper industry for a long time, and it has come to mean that type of advertising which has more than local appeal which is placed ordinarily through an 'advertising agency' or 'national advertising representative' or through both. Normally, the rate for national advertising is higher than the local rate, no doubt partly because of the commissions paid to the above-mentioned agency and representative. Virtually every daily newspaper (and most weeklies) has a 'national advertising representative' and usually compensates him for advertising of this type which comes to the newspaper even though it may not have come as a result of his efforts.

2. Webster's New Collegiate Dictionary (G. & C. Merriam Co., 1956) defines on page 14, 'advertising' as 'any form of public announcement intended to aid directly or indirectly in the sale of a commodity, in securing employment, etc.' It likewise defines 'advertisement' as 'a public notice, as in some public print, by poster, by samples, etc.' It would appear that there is very little difference between the meanings of the two words, the former term being somewhat broader and referring also to other media of public announcement, for example the radio broadcast.

3. With the background of usage in the industry, the Chairman believes that the principal criterion for distinguishing between local and national newspaper advertising is the manner in which it is placed. And the Chairman believes this with full awareness of the fact that much local advertising is 'cooperative' advertising in which a portion of the cost (and sometimes a very large portion, indeed) is reimbursed to the local firm by a national manufacturer or distributor.

4. If the advertisement qualifies as a national (general) advertisement according to the above-mentioned criterion, the Chairman finds that it would be immaterial whether the item being advertised is a tangible 'product' or a 'service'. The Chairman believes that the term 'product' used in paragraph 11 is a generic term rather than intended to refer only to a tangible commodity. In fact, services are specifically mentioned in this paragraph.

5. The Chairman believes that an advertisement qualifying as a national (general) advertisement by the above criterion would not be changed to a local advertisement by the addition of a price or a coupon.

6. The advertising of chain stores sent in mat form from home offices must be interpreted to be local advertising unless the advertisement is placed by the home office, either directly or through an advertising agency, or national advertising representative.

7. Even though a mat of a nationally advertised product is included in a larger ad, other elements of which are local, the ad must be considered a local advertisement. Where the ad is received through local sources from chain stores, the ad must be considered a local advertisement even though mats of nationally advertised products are used in the advertisement.

8. At the hearing, the parties placed different interpretations upon the meaning of Paragraph 7, above quoted. It will be remembered that Paragraph 7 states, 'The attached list of advertising is not subject to reproduction, provided copy is prepared by the home office and sent in mat form to the local newspapers:' and this is followed by the enumeration of fourteen concerns. The Publishers took the po-

sition that the concerns enumerated in the contract were meant to be examples of a type of retailer whose advertisements should be exempt from reproduction under the contract.

9. During the hearing, the Union introduced Union Exhibit 'D'. This Exhibit 'D' was a list of thirty-three concerns which the publishers proposed during the 1949 negotiations should be exempt from reproduction. That fact that, of this list of thirty-three concerns, the subsequent contracts included the names of only fourteen must be given some consideration. The Chairman cannot know the circumstances which led to the shortening of this list from thirty-three to fourteen firms, but it is evident that the publisher's proposal was not accepted and that the ensuing contracts included only the fourteen concerns. For the Chairman to rule now that these fourteen were intended to be representative of many other concerns of that type would 'fly in the face' of the evidence found in Union Exhibit 'D'. The Chairman must hold, therefore, that the parties did not intend the fourteen concerns to be typical of any others, but that in the give and take of negotiations, these fourteen concerns were placed in a separate exempt category. It would, of course, be possible for the parties themselves, through negotiations, to either expand or contract this list but it would be improper for the Chairman of the Board of Arbitration to do this.

\* \* \*

### STATEMENT OF AWARD

Issue Number 2:—The primary criterion for determining whether an advertisement is a national (general) advertisement or a local advertisement is the manner in which it is placed. If it is placed directly by the national firm with a newspaper or is placed indirectly through the medium of an ad-

vertising agency or a national advertising representative, it is construed to be a national (general) advertisement. Under different circumstances it must be considered a local advertisement."

We conclude that said award is not susceptible to the interpretation made by the trial court, towit: that advertising by local concerns placed with the newspaper through an advertising agency is national advertising exempt from reproduction. We think that under said award it is local advertising which is required to be reproduced. We sustain appellant's point 1.

Under the above holding, appellant's other points become immaterial. However, we think that, if they can be considered, they do not manifest reversible error. The judgment is reversed and judgment is rendered for appellant to the effect that advertisements of local firms placed with appellees through an advertising agency is local advertising required by said award to be reproduced.